UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No. 1:14-cv-07194 |
| Plaintiff, | |
| v. | Hon. Gary Feinerman |
| Corinthian Colleges, Inc. d/b/a Everest College, Everest Institute, Everest University, Everest University Online, Everest College Phoenix, Everest College Online, WyoTech, and Heald College, | |
| Defendant. | |

**DEFAULT JUDGMENT AND ORDER**

Plaintiff, the Consumer Financial Protection Bureau (the "Bureau") commenced this civil action on September 16, 2014 under sections 1031(a), 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a), 5564, and 5565, for violations by Defendant Corinthian Colleges, Inc. ("Corinthian") of sections 1031(a) and 1036(a)(1) of the CFPA, which prohibit unfair, deceptive, and abusive acts and practices, as well as for Corinthian's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d.

On May 4, 2015, Corinthian filed a petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, with the United States Bankruptcy Court for the District of Delaware. On August 28, 2015, the bankruptcy court entered an order confirming a liquidation plan for Corinthian, which would result, upon its Effective Date, in Corinthian's dissolution.

On September 11, 2015, Corinthian filed an Answer to the Complaint, and that same day, Corinthian's counsel filed a motion to withdraw. In their motion to withdraw, Corinthian's counsel quoted its September 9, 2015 Status Report on Bankruptcy: "As a

result of the [liquidation plan] and anticipated dissolution of each of the Debtors, Corinthian will not be able to continue its defense of this action beyond filing an Answer" to the Bureau's Complaint. On September 17, 2015, this Court granted Corinthian's counsel's motion to withdraw.

Due to Corinthian's counsel's withdrawal and its statement that it would not be able to continue its defense of the action, the Bureau filed pursuant to Fed. R. Civ. P. 55(a) for an entry of default against Corinthian on October 6, 2015. On October 14, 2015, due to Corinthian's failure to appear or otherwise defend the action, the clerk entered Corinthian's default.

Granting a default judgment is within the court's discretion. *Domanus v. Lewicki,* 742 F.3d 290, 301 (7th Cir.2014). In granting such a default, the "well-pled allegations of the complaint relating to liability are taken as true," *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "As a general rule, a 'default judgment establishe[s], as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint.'" *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (quoting *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.,* 687 F.2d 182, 186 (7th Cir.1982)).

The causes of action are well-pled in the complaint, and Defendant Corinthian has made clear that it does not intend to further appear or defend the action. Pursuant to Fed. R. Civ. P. 55(b)(2), upon application by the Plaintiff, the Court now enters a default judgment against Corinthian for violations of the CFPA and the FDCPA.

It is therefore **ORDERED, ADJUDGED, AND DECREED** as follows:

## I.  Findings

1.  This Court has jurisdiction over the subject matter of this case and over the Defendant Corinthian pursuant to 12 U.S.C. § 5565(a)(1) and 28 U.S.C. §§ 1331, 1345.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 12 U.S.C. § 5564(f).

3. Defendant Corinthian was properly served and submitted an Answer in this action on September 11, 2015; simultaneously with the filing of that answer, however, Defendant's counsel submitted a motion to withdraw and represented to this court that the Defendant did not intend to further appear in or defend this action, due to the bankruptcy case it initiated and its impending dissolution, which took effect on September 21, 2015 under the terms of the liquidation plan for Corinthian, which was approved by the United States Bankruptcy Court for the District of Delaware on August 28, 2015.

4. On September 17, 2015, this Court granted Corinthian's counsel's motion to withdraw, and acknowledged Corinthian's intention to no longer appear in or defend this action.

5. In response to a motion by the Bureau on October 6, 2015, the clerk entered a default against Corinthian pursuant to Fed. R. Civ. P. 55(a) on October 14, 2015.

6. The Complaint states a claim upon which relief can be granted.

7. Because of Corinthian's default, Corinthian is deemed to have admitted the well-pled facts of the complaint; thus, the allegations are taken as true. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012).

8. Section 1055 of the CFPA, 12 U.S.C. § 5565, empowers which Court to order a broad spectrum of relief, including injunctive relief, declaratory relief, restitution to the affected parties, and disgorgement of ill-gotten gains.

9. Plaintiff is entitled to an Order imposing permanent injunctive relief and declaratory relief, and requiring Corinthian to make restitution of $531,224,267 to the borrowers of the private loans that are the subject of this action.

10. This action and the relief awarded are in addition to, and not in lieu of, other remedies that may be provided by law, including both civil and criminal remedies.

11. Entry of this Order is in the public interest.

***Corinthian Engaged in Deceptive Practices in Violation of the CFPA (Count I)***

12. The Complaint contains well-pled allegations that Corinthian violated the CFPA's prohibition on deceptive acts and practices by its misrepresentations and omissions regarding prospective students' career opportunities.

13. Section 1036(a)(1(B) of the CFPA, makes it unlawful for a covered person to engage in any deceptive act or practice. 12 U.S.C. § 5536(a)(1)(B). To interpret the standard for deception under the CFPA, courts have looked to the well-understood prohibition on deception under the Federal Trade Commission Act ("FTCA"). *See* 12 U.S.C. § 5536(a)(1)(B); 15 U.S.C. § 45(a)(1); *Illinois v. Alta Colleges, Inc.,* No. 14 C 3786, 2014 WL 4377579, at *4 (N.D. Ill. Sept. 4, 2014) (holding that the prohibitions against deceptive practices in the CFPA and FTCA are "virtually identical"). An act or practice is deceptive under the CFPA, as under the FTCA, if: (1) there is a representation or omission is likely to mislead consumers acting reasonably under the circumstances; and (2) the representation or omission is material.

14. Corinthian is a covered person and therefore falls under the aegis of the CFPA because:

    a. It engaged in promoting, marketing, offering and providing "consumer financial products or services" within the meaning of the CFPA, 12 U.S.C. 5481(5) in connection with private loans offered to Corinthian students to pay for a portion of their tuition known as "Genesis" loans. Compl. ¶ 27.

b. It brokered the Genesis loans to its students by arranging for such loans and serving as the single point of contact in doing so. Compl ¶ 28.

c. It provided financial advisory services to students and prospective students regarding the use of credit in the payment of tuition for its schools, and in particular, with respect to the Genesis loans. Compl ¶ 29.

15. From approximately March 2008 through July 2014, Corinthian created and marketed the Genesis loan program to students so that Corinthian could charge its students more in tuition than would be covered by Title IV funding from the United States Department of Education ("ED"). Corinthian did this because ED required schools like Corinthian to obtain at least 10% of their revenues from sources other than Title IV funds. Thus in order to continue receiving those funds, which was the main source of Corinthian's revenue, Corinthian burdened its students with this additional cost. Compl. ¶¶ 39-41, 106-110.

16. Corinthian's investment in the Genesis loan program changed over time. Until about August 2011, and from February 2014 through July 2014, Corinthian purchased all Genesis loans from the originating lender approximately two weeks after they were disbursed. Compl. ¶¶ 92-94. From August 2011 until January 2014, another entity purchased the loans from the originating bank soon after disbursal, with Corinthian agreeing to 1) pay that entity a so-called "discount fee" of 50% of the face value of each of the loans, and 2) buy back any loans that became more than 90 days delinquent. Compl. ¶¶ 97-99.

17. More than 60% of Genesis borrowers have defaulted within three years on these unaffordable loans. Compl. ¶ 10.

18. From at least July 2011 to July 2014, Corinthian induced students to take out these Genesis loans through a series of misrepresentations about the likely employment outcomes for Corinthian students. Compl. ¶ 42.

19. Corinthian's job placement rates were misleading to consumers:

   a. Corinthian represented to prospective and current students that its education would offer a "career," not "just another job," but in calculating and presenting job placement rates for graduates, it included temporary jobs that lasted for just one day. Compl. ¶¶ 49-57.

   b. Corinthian presented falsified and overstated job placement rates. It did so by, among other things:

      i. "Fudging the numbers," or simply misreporting the correct numbers; Compl. ¶¶ 58-71.

      ii. Undercounting the pool of "employable" graduates, thereby increasing the percentage of employed graduates out of all the "employable" graduates; Compl. ¶¶ 72-75.

      iii. Engaging in a practice of paying employers to hire its graduates temporarily in order to inflate its favorable job placement statistics. Compl. ¶¶76-83.

20. Corinthian misrepresented the availability and the utility of its career services, which it told prospective and current students would provide career assistance for life, helping them find a job, or improving their resume and interviewing skills. The actual services provided were limited, such as providing postings already publicly available from services like Craigslist, and after graduates obtained initial placements, Corinthian refused to provide any further assistance to them. Compl. ¶¶ 84-89.

21. Corinthian made these misrepresentations to borrowers and prospective borrowers of Genesis loans in order to induce them to take out the loans, and those misrepresentations misled, or were likely to mislead, consumers. Compl. ¶¶ 57, 155-156.

22. Corinthian's representations about the likelihood of a career for its graduates were material to borrowers and prospective borrowers of Genesis loans. Compl. ¶ 57.

***Corinthian Engaged in Unfair Practices in Violation of the CFPA (Count II)***

23. The Complaint contains well-pled allegations that Corinthian violated the CFPA's prohibition on unfair acts and practices.

24. Section 1036(a)(1)(B) of the CFPA makes it unlawful for a covered person to engage in any unfair practice. An act or practice is unfair where "(A) the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and (B) such substantial injury is not outweighed by countervailing benefits to consumers or competition." 12 U.S.C. § 5531(c)(1).

25. Corinthian did not only help to extend the Genesis loans to students, but it also served as a debt collector for those loans. Compl. ¶ 123.

26. Corinthian was particularly incentivized to collect payment in order to prevent loans from becoming delinquent because it was obligated to purchase such loans after they were 90 days past due; Corinthian tracked the Genesis loan payments of its students for this purpose. Compl. ¶ 120-122.

27. Nearly all Genesis loans were made under a payment plan that required monthly payments from the borrower while in school; Compl. ¶ 116.

28. Borrowers were not aware that Corinthian maintained an interest in the Genesis loans nor that Corinthian would serve as a debt collector for the Genesis loans. Compl. ¶¶ 115, 118.

29. In order to extract payment from its students on the Genesis loans, Corinthian engaged in acts or practices that were likely to cause or did cause substantial injury to Genesis borrowers, from at least July 2011 to September 2014, by denying them access to educational resources for which they had paid, including the following:

   a. Corinthian prevented enrolled students from attending class;

   b. Corinthian pulled students out of class in front of their classmates;

   c. Corinthian denied students access to computers and other educational materials; and

   d. Corinthian otherwise prevented enrolled students from completing their course of study. Compl. ¶¶ 119-145.

30. By such acts and practices, Corinthian further caused or was likely to cause substantial injury to Genesis borrowers by publicly disclosing their debts to their fellow students or to their instructors, thereby causing the Genesis borrowers to suffer emotional distress and reputational harm. Compl. ¶ 163.

31. Genesis borrowers could not reasonably avoid this injury because they could not anticipate it; they were unaware that Corinthian maintained an interest in the Genesis loans or that Corinthian would serve as a debt collector for these loans, and therefore could not use this information to avoid the loans. Compl. ¶¶ 115, 118,164.

32. The injury suffered by the Genesis borrowers was not outweighed by countervailing benefits to consumers or competition. Compl. ¶ 165.

***Corinthian Violated the FDCPA (Counts III-V)***

33. The Complaint contains well-pled allegations that Corinthian violated the FDCPA.

34. The FDCPA regulates the conduct of debt collectors. A "debt collector," under the FDCPA, can be any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692d.

35. From approximately August 2011 through at least September 2014, Corinthian took actions to collect the amounts due on the Genesis loans from its students who were borrowers in that program. Compl. ¶¶ 119-145.

36. The borrowers whose loans were not yet 90 past due had loans owned by an entity other than Corinthian; it was only after such loans became delinquent more than 90 days that Corinthian was obligated to purchase them. Compl. ¶¶ 98-100.

37. Therefore, Corinthian was a debt collector within the meaning of the FDCPA for those borrowers who had loans originated from August 2011 until January 2014 and whose accounts were less than 90 days delinquent.

38. Section 806 of the FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

39. As described above, Corinthian engaged in harassing, oppressive, or abusive conduct in connection with the collection of debts flowing from the Genesis loans, from at least August 2011 through September 2014, in several ways, including the following:
   a. Corinthian prevented enrolled students from attending class;
   b. Corinthian pulled students out of class in front of their classmates;
   c. Corinthian denied students access to computers; and
   d. Corinthian otherwise prevented enrolled students from completing their course of study.  Compl. ¶¶ 119-145.

40. Section 805(a) of the FDCPA governs the context of collection by a debt collector. The FDCPA prohibits a debt collector, without prior consent of the consumer or express

permission from a court of competent jurisdiction, from communicating with a consumer in connection with the collection of any debt at a place or time known to be inconvenient to the consumer. 15 U.S.C. § 1692c(a)(1).

41. Without prior consent or the express permission of court of competent jurisdiction, from at least August 2011 through September 2014, Corinthian communicated with Genesis borrowers about collection of their Genesis loans during class time, which Corinthian knew would be inconvenient to those borrowers because it jeopardized their academic performance and disrupted the learning environment. Compl. ¶¶ 119-145, 178.

42. Section 805(b) of the FDCPA restricts communication by a debt collector about a consumer's debt with most third parties in most circumstances. The FDCPA prohibits, without the prior consent of the consumer or the express permission of a court of competent jurisdiction, debt collectors from communicating, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. 15 U.S.C. § 1692c(b).

43. Without prior consent of the Genesis borrowers or the express permission of a court of competent jurisdiction, from at least August 2011 to approximately the date of the closing of its schools, Corinthian's collection efforts were public and disclosed the existence of those debts to instructors, classmates and other third parties. Compl. ¶¶ 119-145, 181.

44. Therefore, Corinthian violated Sections 805(a), 805(b), and 806 of the FDCPA.

***Damages***

45. The Bureau seeks both legal and equitable relief against Corinthian from the Court for the above-referenced violations of law.

46. In particular, the Bureau seeks restitution for affected consumers harmed by Corinthian's illegal conduct.

47. Restitution should provide "the full amount lost by consumers." *F.T.C. v. Febre*, 128 F.3d 530, 536 (7th Cir. 1997) (holding that restitution should be comprised of "consumer redress in the amount of the purchase price of the relevant product or business"). Any such calculation of restitution, however, should take into account "any amounts previously returned to the victims." *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1019 (N.D. Ind. 2000) *aff'd*, 312 F.3d 259 (7th Cir. 2002).

48. Moreover, the Bureau seeks disgorgement of all of Corinthian's ill-gotten gains. "As an equitable remedy, disgorgement is meant to place the deceived consumer in the same position he would have occupied had the seller not induced him to enter into the transaction. Disgorgement also prevents the defendant from being unjustly enriched by his fraud." *Febre*, 128 F.3d at 537.

49. "To ensure that defendants are not unjustly enriched by retaining some of their unlawful proceeds by virtue of the fact that they cannot identify all the consumers entitled to restitution and cannot distribute all the equitable relief ordered to be paid," courts in such situations grant "orders directing equitable disgorgement of the excess money to the United States Treasury." *Id.* at 537.

50. In this case, Corinthian is liable for the entire amount of debt incurred and/or by consumers in connection with the Genesis loans, including origination fees and interest, excluding any amounts previously forgiven.

51. The Bureau bears the burden of proving damages and may do so through affidavits and other documentary evidence showing the amount and calculation of damages. *See, e.g., United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) ("[a]lthough upon default, the well-pleaded allegations of a complaint relating to

liability are taken as true, allegations in a complaint relating to the amount of damages suffered ordinarily are not").

52. The Bureau has established, though competent evidence, that 115,111 affected consumers were harmed by being deceived into taking out the Genesis loans.

53. The Bureau has established, through competent evidence, that the entire principal balance of such wrongfully originated loans, minus amounts forgiven, is $425,408,640.

54. The Bureau has established, through competent evidence, that the entire amount of fees charged for such wrongfully originated loans, is $40,438,346.

55. The Bureau has established, through competent evidence, that affected consumers paid or owed $65,377,281 in interest toward those loans, as of June 2015.

56. Therefore, in total, the amount owed by Corinthian to pay redress to affected consumers is $531,224,267.

57. As explained in the Declaration of Ryan Thomas, attached to the Bureau's Motion, this figure is derived from information provided by the servicer of the Genesis loan program, as well as the current holders of those loans.

## II. Definitions

58. The following definitions apply to this Order.
    a. "Affected Consumer" means any consumer who took out a Genesis loan to pay tuition and/or fees to Corinthian from July 2011 through July 2014.
    b. "Bankruptcy Trustee" means any person named or appointed by the judge in connection with the action filed in the United States Bankruptcy Court for the District of Delaware (Case No. 15-10952-KJC) to represent the interests of Corinthian, or its estate.

  c. "Genesis Loan" means any private loan, including any loan referred to as an "EducationPlus loan" made to a borrower who was a Corinthian student pursuant to a loan program arranged by Corinthian with third parties from July 21, 2011 through July 2014, where Corinthian agreed to pay a "discount fee" to some of those third parties for purchasing such loans from the originating bank and where Corinthian agreed, at times, to purchase all or some of the outstanding loans.

## ORDER

### III. Declaratory and Injunctive Relief

**IT IS HEREBY ORDERED that:**

59. Based on the well-pled allegations of the Complaint, which are taken as true, Defendant Corinthian has violated the CFPA's prohibition on deceptive practices, 12 U.S.C. § 5536(a)(1)(B), by misrepresenting career prospects and career services available to Corinthian students and prospective students in order to induce them to enter into Genesis Loans.

60. Based on the well-pled allegations of the Complaint, which are taken as true, Defendant Corinthian has violated the CFPA's prohibition on unfair practices, 12 U.S.C. § 5536(a)(1)(B), 12 U.S.C. § 5531(c)(1), by causing substantial injury to Genesis Loan borrowers by barring or pulling them from class, withholding educational resources, and otherwise preventing them from gaining access to educational courses or materials for which they had already paid, in order to pressure them to pay their Genesis Loans.

61. Based on the well-pled allegations of the Complaint, which are taken as true, Defendant Corinthian has violated the FDCPA, 15 U.S.C. § 1692d, by engaging in harassing, oppressive, or abusive conduct against Genesis Loan borrowers in connection with the collection of debts from the Genesis Loans.

62. Based on the well-pled allegations of the Complaint, which are taken as true, Defendant Corinthian has violated the FDCPA, 15 U.S.C. § 1692c(a)(1), because without prior consent of the consumer or express permission from a court of competent jurisdiction, Corinthian communicated with Genesis Loan borrowers in connection with the collection of Genesis Loans at a place or time known to be inconvenient to the consumer, to wit, while those borrowers were attending classes at Corinthian.

63. Based on the well-pled allegations of the Complaint, which are taken as true, Defendant Corinthian has violated the FDCPA, 15 U.S.C. § 1692c(b), because without the prior consent of the consumer or the express permission of a court of competent jurisdiction, Corinthian communicated with prohibited third parties regarding the collection of Genesis Loans by making collection efforts while the borrowers were attending classes at Corinthian, which disclosed the existence of those debts to instructors, classmates, and other third parties.

64. Fencing-in provisions are appropriate to prevent future illegal acts. *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 395 (1965). This is case even where the corporate defendant may be defunct. *Think Achievement Corp.*, 144 F. Supp. 2d at 1018.

65. Defendant Corinthian is hereby permanently enjoined from committing any future violations of the CFPA's prohibition on unfair, deceptive, and abusive acts and practices.

66. Defendant Corinthian is hereby permanently enjoined from committing any future violations of the FDCPA's prohibition against debt collectors engaging in harassing, oppressive, or abusive conduct in connection with the collection of debts.

67. Defendant Corinthian is hereby permanently enjoined from committing any future violations of the FDCPA's prohibition against communications with certain third

parties in connection with the collection of debts, without the prior consent of the consumer or the express permission of a court of competent jurisdiction.

68. Defendant Corinthian is hereby permanently enjoined from committing any future violations of the FDCPA's prohibition against communicating with a consumer in connection with the collection of any debt at a place or time known to be inconvenient to the consumer, without prior consent of the consumer or express permission from a court of competent jurisdiction.

IV. **Order for Redress**

**IT IS FURTHER ORDERED that:**

69. A judgment for equitable monetary relief is entered in favor of the Plaintiff Bureau and against Defendant Corinthian in the amount of $531,224,267, which represents the amount of damages owed to Affected Consumers proven through competent evidence.

70. Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to the applicable statutes and regulations to be used for redress for injured consumers, including but not limited to, refund of moneys, restitution, damages or other monetary relief for Affected Consumers and for any attendant expenses for the administration of such redress.

71. If the Bureau determines, in its sole discretion, that providing redress to Affected Consumers is wholly or partially impracticable, or if funds remain after the administration of redress is completed, such funds will be deposited in the U.S. Treasury as disgorgement. Defendant Corinthian will have no right to challenge the choice of remedies under this section and will have no right to contest the manner of distribution chosen.

72. Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## V. Additional Monetary Provisions

**IT IS FURTHER ORDERED that:**

73. In the event of any default on Corinthian's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

74. Corinthian must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Corinthian.

## VI. Retention of Jurisdiction

**IT IS FURTHER ORDERED that:**

75. This Court will retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order.

## VII. Service

**IT IS FURTHER ORDERED that:**

76. This Order may be served upon Corinthian through the Bankruptcy Trustee by certified mail or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or by any representative or agent of the Bureau.

**IT IS SO ORDERED,** on 10/27/2015

_____
The Honorable Gary Feinerman
United States District Judge